IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAYMOND T. FULLER, Jr.<br>6965 Hawkins Gate Road<br>La Plata, MD  20646<br><br>*Plaintiff,*<br><br>v.<br><br>DONALD C. WINTER<br>Secretary of the Navy<br>The Pentagon<br>Washington, DC 20350-1000<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. |

## COMPLAINT

**(APA Review of Decision of the Secretary of the Navy,
Violation of Federal Regulation, Constitutional Violation)**

### JURISDICTION

1. The Court has jurisdiction under 28 U.S.C. § 1331. Plaintiff raises claims under the United States Constitution, federal statutes, and military regulations.

2. The Act of Congress upon which federal question jurisdiction rests is 10 U.S.C. § 1552, which provides for a service member to apply to the Secretary of the Navy ("Secretary") acting through the Board for Correction of Naval Records ("BCNR") to correct errors and injustices, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, which permits a federal court to review and reverse the decision of the Secretary of the Navy or the Board for Correction of Naval Records that is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise contrary to law.

## PARTIES

3. Plaintiff Raymond T. Fuller, Jr., is a United States citizen who served on active duty in the United States Navy from 1983 through 2000.

4. Plaintiff resides at the address stated in the caption.

5. Defendant is the Secretary of the Navy. He is the head of the Navy. 10 U.S.C. § 5013.

## STATUTE OF LIMITATIONS AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff was discharged from the Navy effective December 31, 2000.

7. On December 1, 2003, Plaintiff submitted an application to the BCNR for the correction of records relating proceedings before an administrative separation board and his subsequent discharge.

8. On December 22, 2005, the Department of the Navy issued a final decision denying Plaintiff's application.

9. Plaintiff has exhausted all administrative remedies available to him.

10. 28 U.S.C. § 2501 requires the filing of a claim before this court within six years after such claim first accrues.

11. Plaintiff's claim first accrued on December 31, 2000, when he separated from the Navy.

12. As this Complaint is filed within six years of the date of his separation, it is timely filed. 50 App. U.S.C. § 526(a); *see Bickford v. United States*, 656 F.2d 636, 639 (Ct. Cl. 1981).

## STATEMENT OF FACTS

### Plaintiff's Military Service Prior to Incidents in Question

13. Plaintiff was commissioned an ensign in the Naval Reserve on October 1, 1983, and designated as a Naval Flight Officer.

14. Plaintiff served approximately 17 years and 8 months on active duty.

15. Plaintiff performed exceptionally well in the Navy; he earned four awards of the Navy and Marine Corps Commendation Medal for meritorious service.

16. Plaintiff graduated in March 1998 from the Naval War College with a Master of Arts degree in national security and strategic studies.

17. During his naval career, Plaintiff was consistently promoted, including to Lieutenant Commander on November 1, 1993.

18. Throughout his career, Plaintiff received outstanding fitness reports, citing his consistently distinguished performance.

19. In June 1998, Plaintiff was notified that he had been selected for promotion to Commander.

20. At the time of the incident giving rise to the claim, Plaintiff was on full-time active duty with the Navy International Programs Office ("Navy IPO").

### The Alleged Incidents in Question

21. On September 1, 1998, Plaintiff separated from his wife Linda, signing a formal separation agreement on September 29, 1998.

22. In late December 1998, Plaintiff met Jana Dannemiller. In January 1999, Plaintiff learned that she had two children and was legally separated from her husband; they had ceased

living together as husband and wife on January 1, 1999.

23. In late January 1999, while discussing their divorces, Plaintiff learned that Ms. Dannemiller's husband was a Lieutenant Colonel ("LTC") Army Guard/Reservist; Plaintiff did not consider his friendship with Ms. Dannemiller to be violative of the UCMJ because they were both legally separated and her husband was a weekend warrior and he did not see their friendship as impacting on good order and discipline.

24. In early March 1999, Ms. Dannemiller told Plaintiff that she was separated according to Virginia law, that she and her husband lived in the same house but in separate bedrooms, and that it was going to be an amicable divorce.

25. Plaintiff eventually found out that LTC Dannemiller was an active guardsman. Although involved with Ms. Dannemiller in an intimate relationship by then, Plaintiff still did not consider his conduct to be a violation of the UCMJ because he did not believe their relationship was impacting on good order and discipline and because both parties were legally separated.

26. On May 15, 1999, Ms. Dannemiller and her children moved out of the house when she realized that LTC Dannemiller had been stalking and spying on her. Contrary to what she had told Plaintiff, her divorce was not remaining amicable; LTC Dannemiller engaged in two extramarital affairs during their 11-year marriage, prior to their legal separation.

### Nonjudicial Punishment

27. LTC Dannemiller went to the Naval Inspector General in March 1999, in an effort to have charges brought against Plaintiff, which ultimately led to an Inspector General Investigation into Plaintiff's personal life.

28. Based on the Inspector General investigation, Plaintiff's promotion to Commander was delayed in April 1999, shortly before he was to pin on Commander on May 1, 1999; this delay was ratified and extended in September 1999, ultimately leading to his permanent removal from the O-5 list in November 2000.

29. On October 7, 1999, Admiral Weaver, Commandant, Naval District Washington served Plaintiff with nonjudicial punishment under Article 15, UCMJ, for several incidents involved in his personal life, including: one specification of violating the Joint Ethic Regulation for sending a photograph of a man's buttocks through his government computer system, two specifications of conduct unbecoming an officer for his sexual relationship with Ms. Jana Dannemiller and Ms. Lisa Jade Harris, and two specifications of adultery for those exact same sexual encounters with Ms. Dannemiller and Ms. Harris.

30. Plaintiff submitted a response to each of the allegations. As to the allegation that he had sent inappropriate material through the government computer system, Plaintiff explained why he sent the picture to his office mates and why he did not believe that such conduct was violative of the Joint Ethics Regulation; as to the allegations about his relationship with Ms. Dannemiller, Plaintiff provided a statement that detailed the facts outlined above regarding the circumstances of their pending divorces; as to the allegations about his relationship with Ms. Harris, Plaintiff provided a statement that detailed how he met her during a trip to Australia, that she told him she was 19 years old, that they engaged in a consensual sexual encounter, and thus contrary to the claim in the Article 15 specification, Plaintiff did not engage in a sexual relationship with a known, teenage prostitute.

31. During the Article 15 proceedings, Plaintiff appeared personally before Rear Admiral

Weaver, as did four witnesses on his behalf.

32. While striking the language that Ms. Harris was a known prostitute, Admiral Weaver found Plaintiff guilty of these offenses; he issued Plaintiff a punitive letter of reprimand but elected not to impose any forfeitures of pay as part of the punishment. Plaintiff also lost his pending promotion to Commander.

### Board of Inquiry

33. On June 1, 2000, the Navy held a Board of Inquiry, at which Plaintiff called four witnesses on his behalf, including the Deputy of REDCOM SIX (CAPT Anthony Giles), two supervisors with the Navy's International Programs Office (Robert Schissell and CAPT Donald Aiken), and the Operations Officer for Naval District Washington (Russell Duke); each testified regarding Plaintiff's outstanding duty performance and the Navy's need to retain a stellar performer like him.

34. The Commander of Navy Personnel Command wrote regarding Plaintiff's outstanding career and that Navy aviation needed him to remain on active duty; this recommendation was made after consultations between the Chief of Naval Personnel (Vice Admiral Ryan), Rear Admiral Weaver and Rear Admiral Maslowski, LCDR Fuller's former commanding officer and Director, Navy International Programs.

35. The Deputy Commandant of Naval District Washington (CAPT Cummings) detailed Plaintiff's impressive work since being assigned there in July 1999.

36. Plaintiff also presented a verbal and written statement to the Board, as well as detailed information on his military record.

37. After 53 minutes of deliberations, the Board members found that Plaintiff had committed misconduct violative of Articles 92, 133 and 134, UCMJ; they also found that he **had not** "committed substandard performance of duty due to his failure to demonstrate acceptable qualities of leadership required of an officer in his grade" but that he had done so by failing to conform to prescribed standards of military deportment.

38. The Board members recommended that Plaintiff be separated from the Navy with a general discharge.

39. On August 7, 2000, Admiral Weaver, Commandant, Naval District Washington disagreed with the recommendation of the Board regarding Plaintiff's separation from active duty. Having sat in judgment of Plaintiff for the nonjudicial punishment, and having directly worked with the Plaintiff since July 1999, Admiral Weaver was fully aware of the facts and circumstances that were presented to the Board. He stated:

> I offer my strongest possible recommendation for his retention on active duty. LCDR Fuller has been fully disciplined for his misconduct. However, his past performance and future potential to the Navy warrant his continuation on active duty.
> I have personally observed LCDR Fuller's exceptional efforts since his assignment to Naval District Washington in July 1999. I concur with the comments submitted to the Board of Inquiry by the Deputy Commandant of Naval District Washington (CAPT Cummings) regarding LCDR Fuller's contributions to this command.
> LCDR Fuller is an asset to the Naval District Washington and to the Navy. Without reservation, I would welcome his permanent assignment to NDW.

### Plaintiff's Discharge

40. Notwithstanding Admiral Weaver's recommendation, the Secretary of the Navy ordered that Plaintiff be separated with a general discharge, which was made effective December 31, 2000.

**Application to the Board for Correction of Naval Records**

41. On December 1, 2003, Plaintiff submitted an application for the correction of records to the BCNR.

42. Plaintiff argued in his BCNR application that his discharge was overly severe; that he had previously been fully disciplined for his misconduct by receiving nonjudicial punishment, a punitive letter of reprimand, losing his pending promotion to Commander, and losing the potential to ever reach a higher rank; and that nonjudicial punishment was designed to rehabilitate and discipline military members and should not be used to end their careers.

43. Plaintiff further argued in his BCNR application that the government improperly overstated his misconduct when it drafted the nonjudicial punishment charges; that charging him under two separate punitive articles for the exact same conduct violates military law under *United States v. Frelix-Vann*, 55 M.J. 329 (C.A.A.F. 2001); that charging him with both conduct unbecoming an officer and adultery for each of his relationships with Ms. Dannemiller and Ms. Harris exaggerated his culpability both in the Article 15 proceedings and in the Board of Inquiry proceedings; that recent changes to the adultery article in the UCMJ should be considered in that to constitute an offense under the UCMJ, adulterous conduct must either be directly prejudicial to good order and discipline or service discrediting, and that commanders should consider all relevant circumstances including such factors as whether the conduct persisted despite counseling or orders to desist and whether the accused or co-actor was legally separated; and that the combination of the nonjudicial punishment and counseling had fully rehabilitated Plaintiff.

44. A three-member panel of the BCNR, sitting in executive session, considered Plaintiff's application and recommended that his records be corrected in a report dated December

7, 2005.

45. The BCNR concluded that Plaintiff's many years of exceptional service mitigated his misconduct to the extent that discharge from the Navy was unduly severe, and that he had been adequately punished for his misconduct.

46. The BCNR recommended that Plaintiff's naval record should be corrected to show that he was not discharged on December 31, 2000, but continued to serve on active duty until the first date he was eligible to retire, and the was retired on that date, estimated to be July 1, 2003.

47. The Secretary of the Navy acted in this matter through his designated representative, the Assistant Secretary of the Navy for Manpower and Reserve Affairs.

48. The Assistant Secretary of the Navy for Manpower and Reserve Affairs disapproved the BCNR's recommended action, in a memorandum to the Chairman of the BCNR dated December 16, 2005.

49. The memorandum dated December 16, 2005 states:

> I have reviewed and carefully considered former LCDR Fuller's petition and do not concur with the recommendation provided by the Board. For the reasons outlined below, the recommendation is disapproved and relief is denied.
> The underlying basis for Petitioner's non-judicial punishment clearly established a pattern of misconduct over a substantial period of time. By committing multiple acts of adultery, the Petitioner displayed a complete disregard for the standards of behavior we expect of an officer. Both the Board of Inquiry and my predecessor concluded that an otherwise exemplary record does not mitigate such egregious behavior. I agree. To now re-write the record and allow the Petitioner to retire from the Navy cannot be justified on the facts provided.
>
> Based on the above, the Board's recommendation that Petitioner's record be changed to show that he was not discharged but continued to serve until eligible for retirement is disapproved and relief is denied.

50. On December 22, 2005, the Department of the Navy issued a final decision denying Plaintiff's application, based on the Assistant Secretary's December 16, 2005 memorandum decision that disapproved the BCNR's recommended action.

### Statutory and Regulatory Guidance Governing the Board for Correction of Naval Records

51. 10 U.S.C. § 1552 provides for the correction of errors in the record of a member of the military. Upon timely application and consideration, the statute provides:

> The Secretary of a military department may correct any military record . . . when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the Secretary acting through boards of civilians of the executive part of the military department.

10 U.S.C. § 1552(a)(1).

52. The BCNR is established by the Secretary of the Navy and consists of civilians of the executive part of the Department of the Navy who are appointed by the Secretary of the Navy; three members constitute a quorum. 32 C.F.R. § 723.2(a). The BCNR will review all matters that are properly before it to determine the existence of error or injustice. 32 C.F.R. § 723.2(b).

53. 32 C.F.R. § 723.7(a) provides in pertinent part:

> If the Secretary's decision is to deny relief, such decision shall be in writing and, unless her or she expressly adopts in whole or in part the findings, conclusions and recommendations of the Board, or a minority report, shall include a brief statement of the grounds for denial. See § 723.3(e)(4).

54. 32 C.F.R. § 723.3(e)(4) provides in pertinent part:

> The brief statement of the grounds for denial shall include the reasons for the determination that relief should not be granted, including the applicant's claims of constitutional, statutory and/or regulatory violations that were rejected, together with all the essential facts upon which the denial is based, including, if applicable, factors required by regulation to be considered for determination of the character of and reason for discharge.

55. The Secretary and the BCNR have "an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Yee v. Untied States*, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975) (citations omitted).

## LEGAL CLAIMS

### Count I

**The Secretary's action was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and contrary to law.**

56. The averments of the preceding paragraphs are incorporated by reference as if fully set forth herein.

57. The Secretary's decision did not make a rational connection between the facts found and the choice made, as required by law.

58. The use of boilerplate language in the Assistant Secretary's December 16, 2005 memorandum decision makes it impossible to discern the agency's path, as required by law.

59. The Secretary's decision does not address in any substantive manner Plaintiff's specific contentions, including that he had previously been fully disciplined for his misconduct by receiving nonjudicial punishment; that the government improperly overstated his misconduct when it drafted the nonjudicial punishment charges; that charging him under two separate punitive articles for the exact same conduct violates military law; that charging him with both conduct unbecoming an officer and adultery for each of his relationships with Ms. Dannemiller and Ms. Harris exaggerated his culpability both in the Article 15 proceedings and in the Board of Inquiry proceedings; that recent changes to the adultery article in the UCMJ should be considered in that to constitute an offense under the UCMJ, adulterous conduct must either be directly prejudicial to good order and discipline or service discrediting, and that commanders

should consider all relevant circumstances including such factors as whether the conduct persisted despite counseling or orders to desist and whether the accused or co-actor was legally separated.

60. The failure to address any of these points, which were seemingly meritorious arguments raised by Plaintiff, was arbitrary and capricious. *Mudd v. Caldera*, 26 F.Supp.2d 113, 120-21 (D.D.C. 1998) (citing with approval *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997), and *Neal v. Secretary of Navy*, 639 F.2d 1029, 1042 n.13 (3d Cir. 1981).

61. The Secretary's decision to deny Plaintiff's application was an abuse of discretion because he arbitrarily overruled the recommendations of the BCNR where its findings are justified by the record. *Neal*, 639 F.2d at 1042 n.13 ("although the decision of the [BCNR] is in the form of a recommendation to the Secretary of the Navy . . . he may not arbitrarily overrule the recommendations of the Board where its findings are justified by the record"), *quoted with approval in Mudd*, 26 F.Supp.2d at 121 (D.D.C. 1998).

62. The Secretary and the BCNR are obligated to properly determine the nature of any error or injustice, and also to take such corrective action as is necessary to provide full and effective relief. *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004); *Yee v. United States*, 512 F.2d 1383, 1387 (Ct. Cl. 1975).

63. The Secretary failed to perform his duties under 10 U.S.C. § 1552 and 32 C.F.R. §§ 723.7(a) and 723.3(e)(4).

64. The Secretary's decision was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and contrary to law.

**Count II**
**The Secretary's action was contrary to applicable regulations**

**and violated Plaintiff's constitutional right to due process of law.**

65. The averments of the preceding paragraphs are incorporated by reference as if fully set forth herein.

66. The Secretary's decision in this matter was contrary to applicable regulations, including but not limited to 32 C.F.R. §§ 723.3(e)(4) and 723.7(a), because it did not include the reasons for the determination that relief should not be granted, including the Plaintiff's claims of violation of military law that were rejected, together with all the essential facts upon which the denial was based.

67. The Secretary failed to perform his duties under 10 U.S.C. § 1552, and 32 C.F.R. §§ 723.3(e)(4) and 723.7(a).

68. Violations of military regulations constitute a violation of the due process provisions of the Fifth Amendment. *See, e.g., Antonuk v. United States*, 445 F.2d 592, 595 (6th Cir. 1971) ("violation by the military of its own regulations constitutes a violation of an individual's right to due process of law").

69. The Navy's failure to adhere to its own regulations violated Plaintiff's right to due process of law under 10 U.S.C. § 1552, and 32 C.F.R. §§ 723.3(e)(4) and 723.7(a), and the Fifth Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

(1) Reverse the decision of the Secretary of the Navy;

(2) Order the Secretary of the Navy to expunge all documents pertaining to the Board of Officers proceeding and to correct Plaintiff's records to show that he was not discharged but continued to serve until eligible for retirement;

(3) Order the Secretary of the Navy to award Plaintiff any and all other relief and benefits to which he is entitled had the Navy complied with the relevant law;

(4) Award Plaintiff attorneys' fees and costs expended in pursuit of this claim, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(5) Grant any other relief that the Court deems just and proper.

Respectfully submitted,

David P. Sheldon (DC Bar # 446039)
Law Offices of David P. Sheldon, P.L.L.C.
512 8th Street, S.E.
Washington, DC 20003
Tel: 202.546.9575
Fax: 202.546.0135

| **I (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| **(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**<br>**(EXCEPT IN U.S. PLAINTIFF CASES)** | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>**(IN U.S. PLAINTIFF CASES ONLY)**<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| **(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)** | ATTORNEYS (IF KNOWN) |

| **II. BASIS OF JURISDICTION**<br>(PLACE AN x IN ONE BOX ONLY) | **III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!** |
|---|---|

|   |   |   |   | PTF | DFT |   | PTF | DFT |
|---|---|---|---|---|---|---|---|---|
| 1 | U.S. Government Plaintiff | 3 | Federal Question (U.S. Government Not a Party) | Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| 2 | U.S. Government Defendant | 4 | Diversity (Indicate Citizenship of Parties in item III) | Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
|   |   |   |   | Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and <u>one</u> in a corresponding Nature of Suit)

| **A.** *Antitrust* | **B.** *Personal Injury/ Malpractice* | **C.** *Administrative Agency Review* | **D.** *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| 410 Antitrust | 310 Airplane<br>315 Airplane Product Liability<br>320 Assault, Libel & Slander<br>330 Federal Employers Liability<br>340 Marine<br>345 Marine Product Liability<br>350 Motor Vehicle<br>355 Motor Vehicle Product Liability<br>360 Other Personal Injury<br>362 Medical Malpractice<br>365 Product Liability<br>368 Asbestos Product Liability | 151 Medicare Act<br><br>**Social Security:**<br>861 HIA ((1395ff)<br>862 Black Lung (923)<br>863 DIWC/DIWW (405(g)<br>864 SSID Title XVI<br>865 RSI (405(g)<br>**Other Statutes**<br>891 Agricultural Acts<br>892 Economic Stabilization Act<br>893 Environmental Matters<br>894 Energy Allocation Act<br>890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| **E.** *General Civil (Other)* | | **OR** | **F.** *Pro Se General Civil* | |
|---|---|---|---|---|
| **Real Property**<br>210 Land Condemnation<br>220 Foreclosure<br>230 Rent, Lease & Ejectment<br>240 Torts to Land<br>245 Tort Product Liability<br>290 All Other Real Property<br><br>**Personal Property**<br>370 Other Fraud<br>371 Truth in Lending<br>380 Other Personal Property Damage<br>385 Property Damage Product Liability | **Bankruptcy**<br>422 Appeal 28 USC 158<br>423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>535 Death Penalty<br>540 Mandamus & Other<br>550 Civil Rights<br>555 Prison Condition<br><br>**Property Rights**<br>820 Copyrights<br>830 Patent<br>840 Trademark<br><br>**Federal Tax Suits**<br>870 Taxes (US plaintiff or defendant<br>871 IRS-Third Party 26 USC 7609 | | **Forfeiture/Penalty**<br>610 Agriculture<br>620 Other Food &Drug<br>625 Drug Related Seizure of Property 21 USC 881<br>630 Liquor Laws<br>640 RR & Truck<br>650 Airline Regs<br>660 Occupational Safety/Health<br>690 Other<br><br>**Other Statutes**<br>400 State Reapportionment<br>430 Banks & Banking<br>450 Commerce/ICC Rates/etc.<br>460 Deportation | 470 Racketeer Influenced & Corrupt Organizations<br>480 Consumer Credit<br>490 Cable/Satellite TV<br>810 Selective Service<br>850 Securities/Commodities/ Exchange<br>875 Customer Challenge 12 USC 3410<br>900 Appeal of fee determination under equal access to Justice<br>950 Constitutionality of State Statutes<br>890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| G. *Habeas Corpus/ 2255*                                      | H. *Employment Discrimination*                                                                                                                                                     | I. *FOIA/PRIVACY ACT*                                                                                         | J. *Student Loan*                                                       |
|---|---|---|---|
| 530 Habeas Corpus-General<br>510 Motion/Vacate Sentence       | 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)*        | 895 Freedom of Information Act<br>890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | 152 Recovery of Defaulted Student Loans (excluding veterans) |

| K. *Labor/ERISA (non-employment)* | L. *Other Civil Rights (non-employment)* | M. *Contract* | N. *Three-Judge Court* |
|---|---|---|---|
| 710 Fair Labor Standards Act<br>720 Labor/Mgmt. Relations<br>730 Labor/Mgmt. Reporting & Disclosure Act<br>740 Labor Railway Act<br>790 Other Labor Litigation<br>791 Empl. Ret. Inc. Security Act | 441 Voting (if not Voting Rights Act)<br>443 Housing/Accommodations<br>444 Welfare<br>440 Other Civil Rights<br>445 American w/Disabilities-Employment<br>446 Americans w/Disabilities-Other | 110 Insurance<br>120 Marine<br>130 Miller Act<br>140 Negotiable Instrument<br>150 Recovery of Overpayment & Enforcement of Judgment<br>153 Recovery of Overpayment of Veteran's Benefits<br>160 Stockholder's Suits<br>190 Other Contracts<br>195 Contract Product Liability<br>196 Franchise | 441 Civil Rights-Voting (if Voting Rights Act) |

## V. ORIGIN

1 Original Proceeding   2 Removed from State Court   3 Remanded from Appellate Court   4 Reinstated or Reopened   5 Transferred from another district (specify)   6 Multi district Litigation   7 Appeal to District Judge from Mag. Judge

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

---

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23   **DEMAND $**   **JURY DEMAND:**   Check YES only if demanded in complaint   **YES**   **NO**

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   **YES**   **NO**   If yes, please complete related case form.

**DATE**                **SIGNATURE OF ATTORNEY OF RECORD**

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

   I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

   III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section **II**.

   IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

   VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

   VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.