UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| RAYMOND T. FULLER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-2147 (JDB) |
| | ) | |
| DONALD C. WINTER, Secretary of the Navy, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Donald C. Winter, Secretary of the United States Navy, by and through his

undersigned counsel, respectfully moves for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure.  This motion is supported by an accompanying memorandum

in support, a statement of material facts not in dispute, as well as the administrative record

compiled by the Board of Correction for Naval Records that was served on Plaintiff's counsel

and filed under a separate notice of filing on April 19, 2007.  Defendant requests that judgment

be entered in his favor and that Plaintiff's complaint be dismissed in full with prejudice. A

proposed order consistent with the relief sought in the motion is attached.

Dated: July 11, 2007.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

 

JANE M. LYONS, D.C. BAR # 451737
Assistant United States Attorney
Civil Division
555 4th Street, N.W. - Room E4822
Washington, D.C.  20530
(202) 514-7161

Of Counsel:
Sergio F. Sarkany, Lieutenant, U.S. Navy
Litigation Attorney
Office of the Judge Advocate General
General Litigation Division

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RAYMOND T. FULLER, JR., | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| DONALD C. WINTER, Secretary of the Navy, | ) |
|  | ) |
| Defendant. | ) |

Civil Action No. 06-2147 (JDB)

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Because the underlying facts of Plaintiff's adultery and other personal misconduct in this

case are as undisputed as Navy's authority to impose discipline in response, this case really boils

down to a dispute about the quality of mercy.[1]  Plaintiff, a former Lieutenant Commander, filed a

petition for correction of his service record essentially seeking to substitute a retirement and

discharge for the general discharge he received in December, 2000 after extensive investigation

and administrative disciplinary proceedings.  Although the Board of Correction for Naval

Records recommended granting Plaintiff's petition in part based on his exemplary service, the

Secretary declined that recommendation and denied Plaintiff's petition.  Legally, this case

concerns whether the Secretary of the Navy ("the Secretary") acted arbitrarily, capriciously or

without substantial evidence.  Because the Secretary reviewed and carefully considered

---

[1]  As William Shakespeare's Portia noted:  "The quality of mercy is not strain'd; It droppeth as
the gentle rain from heaven Upon the place beneath."  *The Merchant of Venice*, Act IV, Scene 1.

1

Plaintiff's petition, as well as the entire record, provided a reasoned explanation for denying relief that relied only on facts supported by the record, and mercy or grace are acts of the utmost discretion, the answer to the question is negative.

Specifically, Plaintiff challenges the December 16, 2005 decision of the Secretary that rejected the recommendation of the BCNR to correct Fuller's record to show active duty service until retirement eligibility. Compl. Prayer for Relief. Plaintiff's active duty misconduct led to non-judicial punishment ("NJP"), a Board of Inquiry ("BOI") and separation from service. Plaintiff does not challenge any aspect of this process which culminated in his discharge from active duty on December 31, 2005. Plaintiff asks this Court to reverse the Secretary's decision because it was "arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and contrary to law." Compl. ¶ 64. For relief, in addition to attorney's fees and costs, Plaintiff seeks the expungement of all documents relating to his BOI and a correction of his records to show active duty service until retirement eligibility, including benefits. See Compl. Prayer for Relief.

## II.     Statement of Facts

The Navy commissioned Plaintiff as an ensign on October 1, 1983 and designated him a Naval Flight Officer. Compl. ¶ 13. Plaintiff received his last promotion, to Lieutenant Commander, on November 1, 1993. Compl. ¶ 17. During June 1998, while Plaintiff was on full-time active duty with the Navy International Programs Office at Naval District Washington, the Navy notified Plaintiff of his selection for promotion to Commander. Compl. ¶¶ 19-20.

Despite selection to a higher rank, Plaintiff began to engage in a pattern of misconduct that eventually justified his separation from active duty. In late December 1998, he met and

began a relationship with a woman whom Plaintiff eventually learned was the spouse of an active duty Lieutenant Colonel in the United States Army. Compl. ¶¶ 22, 25; AR 199 . The relationship turned intimate. Compl. ¶ 25. At the time, although the woman supposedly intended to divorce her husband, she had not yet done so and Plaintiff was still married. Compl. ¶ 25; AR 199. Plaintiff continued his adulterous relationship with this woman even after discovering she was the spouse an active-duty Army officer. Id.

After receiving a report from the woman's husband in March, 1999, the Naval Inspector General ("IG") opened an investigation for adultery, sodomy, conduct unbecoming an officer and failure to obey an order. Compl. ¶ 27; AR 05. During its investigation, the IG uncovered additional misconduct. Specifically, in addition to an adulterous affair with the wife of an Army officer, the IG discovered that Plaintiff had engaged in an additional adulterous affair with a teeenage Australian girl (and suspected prostitute); transmitted an indecent photograph using a government computer and solicited a female undercover police officer for sex in exchange for money. Compl.¶ 29; AR 05-06, 209. On June 16, 1999, the IG investigation substantiated five allegations against Plaintiff. AR 05.

Around the outset of the IG investigation, in April 1999, the Navy delayed Plaintiff's promotion to Commander. Compl. ¶ 28. On September 7 1999, in light of the IG's report, the Secretary, upon recommendation by the Chief of Naval Personnel, ratified and extended the delay of Fuller's promotion to Commander. Compl.¶ 28; AR at 05.

On October 7 1999, Plaintiff received Non Judicial Punishment ("NJP") from the Commandant, Naval District, Washington for multiple violations of the Uniform Code of Military Justice ("UCMJ"). Compl. ¶ 29; AR 05. The Commandant charged Plaintiff with: (1)

under Article 92 (orders violation), 10 U.S.C. § 892, one specification of violating a Joint Ethics Regulation by transmitting indecent images over a government computer; (2) under Article 133, 10 U.S.C. §933, two specifications of conduct unbecoming an officer for Plaintiff's wrongful and dishonorable relationships with the two women, and (3) under Article 134, 10 U.S.C. § 934, two specifications of adultery for those same relationships. Compl. ¶ 29; AR 41.  The Commandant, excepting the language that the Australian female was a known prostitute, found Plaintiff guilty of all charges and specifications. Compl. ¶ 32; AR 58.  As punishment, the Commandant issued a punitive letter of reprimand. Compl.¶ 32; AR 43-44.  The Commandant further recommended Plaintiff's name be removed from the commander's promotion list and that he be required to show cause for retention in the Navy. Compl. ¶ 32.

On June 1, 2000, a BOI was convened to determine, in part, whether Plaintiff should be retained in the Navy in light of his misconduct. Compl. ¶ 32; AR 60-61.  At the BOI, Plaintiff made an extensive presentation of testimonial and documentary evidence. Compl. ¶¶ 32-36.  The Board received the evidence, deliberated and concluded that Plaintiff had violated Articles 92, 133 and 134 of the UCMJ. Compl. ¶ 37; AR 60-61.  It found that his behavior failed to conform to prescribed standards of military deportment and that, due to his repeated misconduct, Plaintiff should be separated from the Navy with a general discharge. Compl. ¶¶ 37-38; AR 60-61.

The Secretary, being the final separation authority for Fuller, reviewed and carefully considered the record and all prior recommendations. Compl. ¶ 40.  The Secretary agreed with the BOI and directed separation with a general discharge. Compl. ¶ 40, AR 08-09.  The discharge became effective December 31, 2000.  See id.

4

### III.     Procedural History

On December 1, 2003, Plaintiff applied to the BCNR for correction of his records.

Compl. ¶ 41.  He petitioned BCNR to set aside his discharge and restore him to active duty so

that he could reach retirement eligibility, or grant him enough constructive service to qualify for

retirement, or, in the alternative, upgrade his discharge from general to honorable. AR 04.  In his

application, Plaintiff argued only that, after receiving NJP, an involuntary discharge was overly

severe in light of his exemplary military service over many years.  Compl. ¶ 42.  Plaintiff also

argued that the government overstated his misconduct by charging both conduct unbecoming an

officer and adultery for each of his relationships with the two women with whom he did not deny

having sexual relations.  Compl. ¶ 43.  Plaintiff argued that this method of charging exaggerated

his culpability at both the NJP and BOI proceedings.  Id.  Plaintiff argued that later changes to

the language describing the offense of adultery under the UCMJ should be applied to his

offenses in mitigation.  Id.  Lastly, he argued that he was fully rehabilitated by the combination

of NJP and counseling he received because of his misconduct.  Id.

After reviewing Plaintiff's application, the BCNR issued its report to the Secretary on

December 7, 2005. Compl.¶  44; AR 4-10.  The report noted that, although the specifications

under Article 134 were "arguably superfluous," the punishment imposed at NJP - a letter of

reprimand - was less than the maximum allowable and, further, that the "true nature of

Petitioner's misconduct would be clear to any reviewer." AR 09.  The BCNR also noted that

despite his arguments about changes to the adultery language under the UCMJ the Plaintiff's past

behavior constituted the offense of adultery.  Id.  The BCNR, nevertheless, concluded that

Plaintiff's discharge was "unduly severe" given his "many years of exceptional service." Compl.

¶ 44; AR 09. The BCNR concluded that Plaintiff was "adequately punished" for his misconduct since he was - as of that date - discharged without retirement benefits for almost five years. Id. Accordingly, the BCNR recommended that Plaintiff's records be corrected to show that he was not discharged on December 31, 2000, but continued to serve on active duty until the first date he became retirement eligible (July 1, 2003). Id.

BCNR forwarded its final report and Plaintiff's petition, along with all enclosures, to the Secretary for a final decision. Compl. ¶ 47. The Secretary, through the Assistant Secretary of the Navy for Manpower and Reserve Affairs, reviewed and carefully considered the petition. AR 11. On December 16, 2005, the Secretary disapproved BCNR's recommendation and denied all relief, reasoning that the "underlying basis" for Plaintiff's NJP "clearly established a pattern of misconduct over a substantial period of time." Compl. ¶¶ 48-49; AR 11. The Secretary asserted that the multiple acts of adultery evidenced a "complete disregard for the standards of behavior we expect of an officer." Compl.¶ 49; AR 11. Finally, the Secretary concluded that he agreed with the BOI that Plaintiff's "egregious behavior" was not sufficiently mitigated by his record. Id. Based upon the Assistant Secretary's December 16, 2005 memorandum, on December 22, 2005, the Navy issued a final decision denying Plaintiff's application for relief. Compl. ¶ 50.

## IV.    Argument

### A.    Standard of Review

Judicial review of military personnel decisions is not a *de novo* review of the underlying issues. The Court must consider whether the Secretary acted arbitrarily and capriciously in applying his "broad grant of discretion" to correct military records under 10 U.S.C. § 1552. Kreis v. Secretary of the Air Force, 866 F.2d 1508, 1514-15 (D.C. Cir. 1989). The Secretary or

his designee "may correct any military record" when "the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a). The Secretary may rely on a "presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties." See 32 C.F.R. § 723.3(e)(2). Policy considerations weigh heavily in favor of the Court giving the "widest possible latitude" to the armed services in their administration of personnel matters. Sanders v. United States, 594 F.2d 804, 813 (Ct. Cl. 1979); see Orloff v. Willoughby, 345 U.S. 83 (1953). Unlike the typical review under the Administrative Procedure Act, military personnel decisions are entitled to an "unusually deferential standard of review." Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000) (quoting Kreis, 866 F.2d at 1513-14). In short, the Court's task in reviewing military personnel decisions under the APA is to determine whether "the decision making process was deficient, not whether [the] decision was correct." Dickson v. Secretary of Defense, 68 F.3d 1396 (D.C. Cir. 1995) (quoting Kreis, 866 F.2d at 1511).

When challenging a Secretary's decision not to change a record, a plaintiff has the burden of showing "by cogent and clearly convincing evidence" that the decision was the result of a material legal error or injustice. See McDougall v. Widnall, 20 F. Supp.2d 78, 82 (D.D.C. 1998); Sanders v. United States, 594 F.2d at 813. In such event, the abuse of administrative discretion rises to the level of legal error which merits judicial relief. Id. These are comparatively rare cases. Sanders, 594 F.2d at 813; see Viles v. Ball, 872 F.2d 491, 495 (D.C. Cir. 1989) (citing Sanders). Perhaps they are infrequent because the proof must overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers,

discharge their duties correctly, lawfully, and in good faith.  See Frizelle v. Slater, 111 F.3d 172, 176 (D.C. Cir. 1997) ("a party seeking review of a board decision bears the burden of overcoming the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith").

Once the Secretary fairly considers all the evidence in the record, he is "free to draw his own reasonable inferences and conclusions from the evidence before him."  See Mudd v. Caldera, 134 F. Supp. 2d 138, 143 (D.D.C. 2001) (citing Mail Order Ass'n of America v. United States Postal Serv., 2 F.3d 408, 421 (D.C. Cir. 1993)).  All the Secretary must do is provide a rational explanation for the decision based on the administrative record.  See 5 U.S.C. §§ 706(2)(A), 706(2)(E); Manufacturers Ass'n v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 43 (1983); Frizelle v. Slater, 111 F.3d 172, 176 (D.C. Cir. 1997); Kreis, 866 F.2d at 1514-15; Miller v. Lehman, 801 F.2d 492, 497 (D.C. Cir. 1986).

Because this case challenges a final administrative action, the Court's review is limited to the administrative record.  Doyle v. England, 193 F. Supp. 2d 202, 206 (D.D.C. 2002) (citing Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995), amended, 967 F. Supp. 6 (D.D.C. 1997)).  "Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record."  Id. (citing Richards v. I.N.S., 554 F.2d 1173, 1177 n. 28 (D.C. Cir. 1977)).  Judgment upon the administrative record is appropriate when there is "no genuine issue as to a material fact" so that the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).   The "scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."  Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.

Where, as here, the Secretary denies relief, then federal regulations require him to put that decision in writing. Moreover, unless a Secretary expressly adopts, in whole or in part, the findings, conclusions and recommendations of the board then he or she must include a "brief statement of the grounds for denial." 32 C.F.R. § 723.7. That statement:

> shall include the reasons for the determination that relief should not be granted, including the applicant's claims of constitutional, statutory and/or regulatory violations that were rejected, together with all the essential facts upon which the denial is based, including, if applicable, factors required by regulation to be considered for determination of the character of and reason for discharge.

32 C.F.R. § 723.3(e)(4). A reviewing court should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Miller v. Lehman, 801 F.2d at 497 (citing Bowman Transp., Inc. v. Arkansas-Best Motor Freight System, 419 U.S. 281, 286 (1974)). All that is required is that the agency's decision "minimally contain a rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43 (1983); Fluellen v. United States, 44 Fed. Cl. 97, 101 (1999), aff'd, 225 F.3d 1298 (Fed. Cir. 2000). In addition, "if the necessary articulation of basis for administrative action can be discerned by reference to clearly relevant sources other than a formal statement of reasons, [the court] will make the reference." Miller, 801 F.2d at 497 (quoting Environmental Defense Fund, Inc. v. EPA, 465 F.2d 528, 537 (D.C. Cir. 1972)).

**B.    By Identifying Fuller's Pattern of Misconduct as the Justification for Denying Relief, the Secretary Made a "Rational Connection" Between the Facts Found and the Choice Made.**

Plaintiff alleges that the Secretary's decision was an abuse of discretion since it made no "rational connection between the facts found and the choice made." Compl. ¶ 57. That standard is not particularly demanding, and is more than satisfied here. See Miller v. Lehman, 801 F.2d at

9

497; Environmental Defense Fund v. EPA, 465 F.2d 538, 537 (D.C. Cir. 1972) ("If the necessary articulation of bases for administrative action can be discerned by reference to clearly relevant sources other than a formal statement of reasons, we will make the references.").  Notably, Plaintiff does not contest any single fact in the record.  See also AR 50 (Nov. 30, 1999 signed statement from Plaintiff indicating: "I now realize that my behavior, at that time, in violation of the UCMJ, [was] prejudicial to the good order and discipline, and of a nature to bring discredit upon the armed forces."); AR 111-13 (summarizing and explaining the relevant incidents in Plaintiff's personal life without denying any of the salient facts).  As a result, Plaintiff's challenge is severely limited to challenging the Secretary's interpretation of those facts which is subject to substantial deference.

But even assuming for purposes of argument that the Secretary's memorandum is of "less than ideal clarity", it still meets the minimum requirements to establish a "rational connection" between the "facts found and the choice made."  See Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43 (1983).  First, the Secretary states that he "reviewed and carefully considered" Plaintiff's petition. Compl. ¶ 49; AR 11.  He then specifically identifies multiple acts of adultery committed over a substantial period of time as the "facts found."  Id.  The Secretary then characterizes this misconduct as "egregious behavior" on the way to concluding that Plaintiff displayed a "complete disregard for the standards of behavior we expect of an officer."  Id.  This is strong language reflecting a reasoned choice and a judgment which logically led to the Secretary denying Plaintiff's petition.  The Secretary's reasoning clearly establishes a rational connection between what it describes as Plaintiff's pattern of misconduct and the natural decision to deny relief.

10

Further, there is no indication here that the Secretary acted on any evidence not presented to him by the BCNR.   Instead, the rationale supporting the Secretary's denial of relief in this case can, if necessary, also be discerned by reference to the administrative record.  See Miller, 801 F.2d at 497 (quoting Environmental Defense Fund, Inc. v. EPA, 465 F.2d at 537).  The administrative record contains a variety of sources - including witness statements, reports of proceedings and Plaintiff's own actual and constructive admissions - detailing repeated misconduct over a prolonged period.  See generally AR.  It is therefore a "clearly relevant source[]" - other than a formal statement of reasons - from which this Court can discern the Secretary's basis for denying Fuller the relief he sought.  See id.

Plaintiff's assertion that the Secretary's designee did not consider and discuss - at least to the satisfaction of Plaintiff - every conceivable legal point raised by Plaintiff cannot result in this Court substituting its judgment in such matters, especially in this case where the main issues are clear.  In reviewing agency action under the APA's arbitrary and capricious standard, a court "will not disturb the decision of an agency that has 'examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." MD Pharmaceutical, Inc. v. Drug Enforcement Admin., 133 F.3d 8, 16 (D.C. Cir. 1998) (quoting Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43).  The requirement that an agency provide a rational explanation for its action "does not mean that an agency's decision must be a model of analytic precision to survive a challenge.  A reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" Dickson, 68 F.3d at 1404 (quoting Bowman, 419 U.S. at 286).  The Secretary's path in this matter is easily discerned and completely justified.

11

While Plaintiff may disagree with the Secretary's conclusions, because they "reflect reasoned decision making based on evidence in the record," the Secretary's decision should be affirmed.  See Steel Mfrs. Ass'n v. E.P.A., 27 F.3d 642, 646 (D.C. Cir. 1994); see also Conf. of State Bank Supervisors v. Office of Thrift Supervision, 792 F. Supp. 837, 842 (D.D.C. 1992) (court must affirm decision with which it disagrees if rational basis for decision exists).

### C.    By Emphasizing That Fuller's Pattern of Misconduct Justifies Denying Relief, the Secretary's Decision Adequately Addresses Fuller's Contentions

Plaintiff vaguely asserts that the Secretary's decision is flawed because it failed to address his specific contentions "in any substantive manner."  Compl. ¶ 59.  In general, an "extensive exegesis" of the underlying reasoning is not required by law, merely an explanation of the basis for the decision.  Neal v. Secretary of Navy & Commandant of Marine Corps, 639 F.2d 1029 (3d Cir. 1981).  If the record contains such evidence that a reasonable mind might accept as adequate to support a conclusion, the Court must accept it.  Smith v. Dalton, 927 F. Supp. 1, 5 (D.D.C. 1996).

Here, the Secretary's decision, however, clearly demonstrates an adequate consideration of both Plaintiff's arguments for correction and the BCNR's recommendations.  The decision states that the Secretary "reviewed and carefully considered LCDR Fuller's petition" and that he does "not concur with the recommendation provided by the Board." Compl.¶ 49; AR 11.  The decision also implicitly addresses Plaintiff's main arguments.  For example, the Secretary's decision addresses Fuller's arguments relating to multiplicity of charges by emphasizing that the "underlying basis for [Fuller's] [NJP]" established a pattern of misconduct over a substantial period (emphasis added).  Compl. ¶ 49; AR 11.  The Secretary, therefore, rejected Fuller's

12

arguments relating to the form of the charges to conclude that the underlying misdeeds alone are sufficient to deny relief.

As the BCNR noted when it rejected Plaintiff's identical argument in his application for correction, but nevertheless recommended in favor of granting in part his petition: "[T]he true nature of Petitioner's misconduct would be clear to any reviewer." AR 09.          The Secretary's language also rejects (by clear implication) Plaintiff's remaining contentions -- that he was fully disciplined for his misconduct by receiving NJP and that later changes to the language in the UCMJ defining adultery should now be used to find that Plaintiff did not commit adultery.  Compl. ¶ 59.  First, at NJP, Plaintiff received only a punitive letter of reprimand, which is far less than the maximum allowable punishment authorized at such a proceeding. Second, by concluding that Plaintiff's "egregious behavior" is not mitigated by his record (see AR 11), the Secretary again emphasized the simple point that Fuller's acts - standing alone and regardless of legal description or prior punishment- justify a denial of relief.  While it is possible the Secretary could have explained his reasons for rejecting Plaintiff's arguments in more detail, an agency's decision need not be a model of analytic precision to survive a challenge.  Because the decision is ample in this case, it should be upheld.

> **D.    By Specifying That He Took Account of the Petition and the Recommendation of the BCNR, the Secretary's Decision Establishes the Agency's Path in Denying Relief**

Plaintiff attacks what he characterizes as the use of "boilerplate language" in the Secretary's December 16, 2006 memorandum which Plaintiff asserts makes it "impossible to discern the agency's path." Compl. ¶ 58.  Plaintiff fails to specify which language he considers "boilerplate" or why he considers it boilerplate.  Even judged by the standard of a pleading, such

13

a general averment may well be insufficient even to state a claim.  See Bell Atlantic Corp. v. Twombly, --- U.S. --- , 127 S. Ct. 1955, 1964-65 (2007) (factual allegations "must be enough to raise a right to relief above the speculative level," and that a plaintiff must make "a 'showing,' rather than a blanket assertion, of entitlement to relief.'").

But even if it adequately mounts a challenge, the merits clearly tip in favor of upholding the Secretary's decision because the Secretary's path is evident in the decision itself and there are no magic words that are either required or prohibited.  The Secretary states that he "carefully considered former LCDR Fuller's petition and do[es] not concur with the recommendation provided by the [BCNR]." Compl. ¶ 39; AR 11.  He also states that he is agreeing with the BOI and his former predecessor that Fuller's "otherwise exemplary record does not mitigate such egregious misconduct."  Id.  This language gives clear indication of the Navy's path in deciding to deny Plaintiff relief.

E.    **A Showing by Fuller That the BCNR's Recommendation Was Justified by the Record or That the Secretary Failed to Fully Satisfy 32 C.F.R. §723.7's Requirement for a Brief Statement of Grounds Falls Far Short of Establishing an Arbitrary Decision or of Rebutting the Presumption of Administrative Regularity**

Plaintiff argues that, since the BCNR's recommendations were justified by the record, the Secretary's decision to disapprove must be arbitrary. Compl. ¶ 61.  However, simply establishing that the BCNR's recommendations were justified does not establish (or even provide evidence of) an arbitrary decision by the Secretary.  To the contrary, this Circuit has recognized that, because the final decision-making authority rests with the Secretary, there is no less deference accorded his decision where he does not follow the BCNR's recommendation.  See Miller, 801 F.2d 497; Doyle, 193 F.Supp.2d at 207 (noting that "[section 1552] confers a certain amount of

14

discretion on the Secretary, including the discretion to differ with a board's recommendations where the evidence is susceptible to varying interpretations.").

As discussed above, the Secretary carefully reviewed the relevant records and provided a reasoned, coherent rejection of the BCNR's recommendations.  He simply disagreed with the BCNR that Fuller's service sufficiently mitigated his misconduct to the extent that relief was justified.  Under 10 U.S.C. §1552(a), and this Circuit's precedent, the Secretary was well within his discretion to reach a different conclusion where, as here, "the evidence is susceptible to varying interpretations."  See Miller, 801 F.2d 497; Doyle, 193 F.Supp.2d at 207.   The Court is not empowered to second-guess the Secretary merely because it might have reached a different result.

Similarly, even if Plaintiff could establish that the Secretary's memorandum falls short of 32 C.F.R. § 723.7's requirement for a brief statement of grounds, the Secretary's action is entitled to a presumption of administrative regularity that Plaintiff is unable to rebut.  See Doyle, 193 F.Supp.2d at 207.  In the absence of clear and persuasive evidence to the contrary, this Court must conclude that the Secretary discharged his duties correctly, lawfully, and in good faith.  See Frizelle, 111 F.3d at 176.

Discipline and mitigation are inherently discretionary.  This Circuit has long held that the administrative decisions of military agencies are entitled to a high level of deference.  Kosnik v. Peters, 31 F. Supp. 2d 151, 157 (D.D.C. 1988).  In the context of less momentous personnel matters such as personnel ratings, courts provide this deference to "ensure 'that the courts do not become a forum for every soldier dissatisfied with his or her ratings [and thereby] destabilize military command."  Bliss v. Johnson, 279 F.  Supp. 2d 29, 34 (D.D.C. 2003)(quoting Musengo

15

v. White, 286 F.3d 535, 538 (D.C. Cir. 2002).  Furthermore, the Court has expressly found that

courts should defer to military decisions regarding personnel matters:

> [T]he "complex, subtle and professional decisions as to the composition, training, equipping, and control of a military force" are vested by the Constitution solely in the legislative and executive branches. Gilligan v. Morgan, 413 U.S. 1, 10 (1973). It would be damaging to shift the decision from trained military professionals to a non-specialist judiciary. See Taylor v. United States, 33 Fed. Cl. 54, 58 (1995).

Kosnik 31 F. Supp. 2d at 158.  This Circuit recognizes that those enlisted in the military are part

of  a "specialized community" governed by "separate discipline from that of the civilian."  Id.

Accordingly, while Plaintiff undoubtedly disagrees with the Secretary's decision denying his

petition, that does not amount to a successful legal challenge to the decision.  Schlesinger v.

Councilman, 420 U.S. 738, 757 (1975)(observing that the military is a specialized society that

"must insist upon a respect for duty and discipline without counterpart in civilian life").

Furthermore, it is abundantly clear that the recommendations of the Board of Corrections

are not binding on the Secretary of the Navy.  Miller 801 F.2d at 497.  10 U.S.C. § 1552(a)

(1982), which outlines the provisions for correcting military records, provides that the "Secretary

of a military department . . . **may correct** any military record of that department **when he**

**considers it necessary** to correct an error or remove an injustice." (emphasis added).

Additionally, the members of the Board of Corrections are appointed by the Secretary and serve

at his pleasure.  Id.  Miller finds that there is " no doubt that the final decision is to be made by

him [the Secretary of the Navy.]" Id.

**Conclusion**

For all of these reasons, Defendant respectfully asks the Court to grant his motion and enter judgment in his favor.

Dated: July 11, 2007.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

 /s/
_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

 /s/
_____
JANE M. LYONS, D.C. BAR # 451737
Assistant United States Attorney
Civil Division
555 4th Street, N.W. - Room E4822
Washington, D.C.  20530
(202) 514-7161

Of Counsel:
Sergio F. Sarkany, Lieutenant, U.S. Navy
Litigation Attorney
Office of the Judge Advocate General
General Litigation Division

17

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAYMOND T. FULLER, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 06-2147 (JDB) |
| | ) |
| DONALD C. WINTER, Secretary of the Navy, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
NOT IN GENUINE DISPUTE**

Pursuant to Local Civil Rules 7(h) and Rule 56.1, defendant Donald C. Winter, Secretary of the Navy, respectfully submits this statement of material facts not in genuine dispute in support of his motion for summary judgment.

1.     The Navy commissioned Fuller as an ensign on October 1, 1983 and designated him a Naval Flight Officer. Compl. ¶ 13.  Fuller received his last promotion, to Lieutenant Commander, on November 1, 1993. Compl. ¶ 17.

2.     During June 1998, Fuller was on full-time active duty with the Navy International Programs Office at Naval District Washington. Compl. ¶ 20.  That month the Navy notified Fuller of his selection for promotion to Commander. Compl. ¶ 19.  Due to the investigation and outcome of administrative processes addressing allegations of misconduct in Plaintiff's personal life, his promotion to Commander was delayed and never effectuated prior to his discharge effective December 31, 2000.  See Compl. ¶¶ 28, 40; AR at 05, 08-09.

3.      In late December 1998, Fuller met and began a relationship with a married

woman who was the spouse of an active duty Lieutenant Colonel in the United States Army.

Compl. ¶¶ 22, 25; AR 199.  Plaintiff admits that the relationship became intimate at a time when

Plaintiff was separated from his wife and the woman intended to divorce her husband but had not

yet done so. Compl. ¶ 25; AR 57-58; 199.  Plaintiff further admits that he continued his

adulterous relationship with this individual even after she revealed to him that her spouse was an

active-duty Army officer.  Id.; see also AR 50 (Nov. 30, 1999 signed statement from Plaintiff

indicating: "I now realize that my behavior, at that time, in violation of the UCMJ, [was]

prejudicial to the good order and discipline, and of a nature to bring discredit upon the armed

forces."); AR 111-13 (summarizing and explaining the relevant incidents in Plaintiff's personal

life without denying any of the salient facts in the charges).

4.      The Naval Inspector General ("IG") subsequently investigated Plaintiff's

misconduct.  Compl. ¶ 27; AR 05.  During its investigation, the IG uncovered misconduct by

Plaintiff beyond his adulterous affair, including that he had engaged in sexual relations with an

Australian teenage girl and suspected prostitute, transmitted an indecent photograph using a

government computer, and been arrested for soliciting a female undercover police officer for sex

in exchange for money.  See Compl.¶  29; AR 05-06, 209.

5.      On June 16, 1999, the IG investigation substantiated five allegations against

Fuller. AR 05.

6.      On October 7 1999, Plaintiff received a Non-Judicial Punishment ("NJP") from

the Commandant, Naval District, Washington for multiple violations of the Uniform Code of

Military Justice ("UCMJ"). Compl. ¶ 29; AR 05.  The Commandant charged Plaintiff with: (1)

under Article 92 (orders violation), 10 U.S.C. § 892, one specification of violating a Joint Ethics Regulation by transmitting indecent images over a government computer; (2) under Article 133, 10 U.S.C. § 933, two specifications of conducting unbecoming an officer for Plaintiff's wrongful and dishonorable relationships with the spouse of an Army officer and a young Australian woman; and (3) under Article 134, 10 U.S.C. § 934, two specifications of adultery for Plaintiff's relationships with the same women.   Compl. ¶ 29; AR 41.  The Commandant found Plaintiff guilty of all charges and specifications, but amended the language of the specification involving the Australian woman to excise the portion that she was a known prostitute.  Compl. ¶ 32; AR 58.  As punishment, the Commandant issued a punitive letter of reprimand. Compl.¶ 32; AR 43-44.  The Commandant also recommended that Plaintiff's name be removed from the commander's promotion list and that he be required to show cause for retention in the Navy. Compl. ¶ 32.

        7.     On June 1, 2000, a Board of Inquiry ("BOI") was convened to determine, in part, whether Plaintiff should be retained in the Navy in light of his proven misconduct. Compl. ¶ 32; AR 60-61.  At the BOI, Plaintiff presented live witnesses and documentary evidence. Compl. ¶¶ 32-36.  The Board received the evidence, deliberated and concluded that Plaintiff had violated Articles 92, 133 and 134 of the UCMJ. Compl. ¶ 37; AR 60-61; see also AR 246-80.  The Board found that Plaintiff's behavior failed to conform to prescribed standards of military deportment and that, due to his repeated misconduct, he should be separated from the Navy with a general discharge. Compl. ¶¶ 37-38; AR 60-61.

        8.     The Secretary, being the final separation authority for Plaintiff, reviewed and carefully considered the record and all prior recommendations. Compl. ¶ 40.  The Secretary

- 3 -

agreed with the BOI and directed separation with a general discharge. Compl. ¶ 40, AR 08-09.

The discharge became effective December 31, 2000. See id.

9.    On December 1, 2003, Plaintiff applied to the Board of Correction for Naval

Records ("BCNR") for correction of his records. Compl. ¶ 41.  Plaintiff requested that the BCNR

set aside his general discharge and restore him to active duty so that he could reach retirement

eligibility, or grant him enough constructive service to qualify for retirement, or, in the

alternative, upgrade his discharge from general to honorable. See AR 04.  In his application,

Fuller argued that, after receiving NJP, an involuntary discharge was overly severe. Compl. ¶ 42.

He argued that the government overstated his misconduct by charging both conducting

unbecoming an officer and adultery for each of his relationships with the two women.  Compl. ¶

43.  Plaintiff argued that this exaggerated his culpability at both the NJP and BOI proceedings.

Id.  He argued that later changes to the language describing the offense of adultery under the

UCMJ should be applied to his offenses in mitigation.  Id.  Lastly, he argued that he was fully

rehabilitated by the combination of NJP and counseling he received because of his misconduct.

Id.

10.    After reviewing Plaintiff's application, the BCNR issued its report to the Secretary

on December 7, 2005. Compl. ¶ 44; AR 4-10.  The report noted that, although the specifications

under Article 134 were "arguably superfluous," the punishment imposed at NJP - a letter of

reprimand - was less than the maximum allowable and, further, that the "true nature of

Petitioner's misconduct would be clear to any reviewer." AR 09.  The BCNR also noted that

despite his arguments about changes to the adultery language under the UCMJ the Fuller's past

behavior constituted the offense of adultery.  Id.  The BCNR, nevertheless, concluded that

Plaintiff's discharge was "unduly severe" given his "many years of exceptional service." Compl. ¶ 44; AR 09. The BCNR concluded that Plaintiff was "adequately punished" for his misconduct since he was - as of that date - discharged without retirement benefits for almost five years. Id. The BCNR recommended that Plaintiff's records be corrected to show that he was not discharged on December 31, 2000, but continued to serve on active duty until the first date he became retirement eligible (July 1, 2003). Id.

       11.     BCNR forwarded its final report and Fuller's petition, along with all enclosures, to the Secretary for a final decision. Compl. ¶ 47. The Secretary, through the Assistant Secretary of the Navy for Manpower and Reserve Affairs, reviewed and carefully considered Fuller's petition. AR 11. On December 16, 2005, the Secretary disapproved BCNR's recommendation and denied relief, reasoning that the "underlying basis" for Plaintiff's NJP "clearly established a pattern of misconduct over a substantial period of time." Compl. ¶¶ 48-49; AR 11. The Secretary explained that the multiple acts of adultery evidenced a "complete disregard for the standards of behavior we expect of an officer." Compl. ¶ 49; AR 11. Finally, the Secretary concluded that he agreed with the BOI that Plaintiff's "egregious behavior" was not sufficiently mitigated by his service record to warrant granting any part of the petition. See id.

       12.     Based upon the Assistant Secretary's December 16, 2005 memorandum, on December 22, 2005, the Navy issued a final decision denying Fuller's application for relief. Compl. ¶ 50.

       13.     Plaintiff filed the instant action on December 15, 2006. See Docket Entry No. 1.

Dated: July 11, 2007.

Respectfully submitted,

_____

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

 /s/
_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

\                                           /s/
_____
JANE M. LYONS, D.C. BAR # 451737
Assistant United States Attorney
Civil Division
555 4th Street, N.W. - Room E4822
Washington, D.C.  20530
(202) 514-7161

Of Counsel:
Sergio F. Sarkany, Lieutenant, U.S. Navy
Litigation Attorney
Office of the Judge Advocate General
General Litigation Division

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

RAYMOND T. FULLER, JR.,                                )
                                                                            )
                         Plaintiff,                                  )
                                                                            )
            v.                                                             )            Civil Action No. 06-2147 (JDB)
                                                                            )
DONALD C. WINTER, Secretary of the Navy,     )
                                                                            )
                         Defendant.                              )
_____)

## ORDER

      THIS MATTER is before the Court on defendant's motion for summary judgment,

plaintiff's opposition, and a full administrative record.  The Court finds that the Secretary's

denial of Plaintiff's petition to the Board of Correction for Naval Records was well-reasoned and

substantially justified by the administrative record.  Further, under the highly discretionary

standard for this Court's review of military personnel decisions, the Court also finds that the

Secretary's decision was not arbitrary or capricious or contrary to law.  Accordingly, the Court

upholds the Secretary's denial of Plaintiff's petition, and it is hereby

      **ORDERED** that defendant's motion for summary judgment is **GRANTED**, and it is

further

      **ORDERED** that **Judgment** is entered in favor of defendant on all claims.

_____                                    _____
Date                                                                   JOHN D. BATES
                                                                          United States District Judge

Copies to Counsel of Record Through ECF