## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**RAYMOND T. FULLER, JR.,**

      **Plaintiff,**

      **v.**

**DONALD C. WINTER,**
**Secretary of the Navy,**

      **Defendant.**

**Civil Action No.  06-2147 (JDB)**

### MEMORANDUM OPINION

Plaintiff Raymond T. Fuller, Jr., a former Lieutenant Commander in the United States Navy, brings this action seeking to compel defendant Donald C. Winter, the Secretary of the Navy, to correct alleged "errors and injustices" contained in plaintiff's military service records. Specifically, Fuller asks that the Court reverse the Secretary's decision to deny his administrative request, pursuant to 10 U.S.C. § 1552, to amend his naval records.  At the moment, Fuller's records show that he received a general discharge from the Navy in 2000.  He seeks to amend that to state that he served until 2003, when he then retired from active service.  Both parties have moved for summary judgment.  Those motions are now fully briefed and ripe for resolution. Upon careful consideration, and for the reasons set forth below, the Court will grant Fuller's motion and deny the Secretary's motion.

### BACKGROUND

The facts of this case are not seriously in dispute.  In October 1983, Fuller was commissioned at the rank of ensign by the Navy.  Def.'s Stmt. of Facts ¶ 1.  He received his final

full promotion to the rank of Lieutenant Commander on November 1, 1993.  Id.  By all accounts,
Fuller was a superb naval officer and he enjoyed a decorated professional career.  Indeed, in June
1998, the Navy informed him that he had been selected for promotion to the rank of Commander.
Id. ¶ 2.  An investigation into his personal life, however, resulted in the delay and eventual
cancellation of that promotion.  Id.  In fact, Fuller was ultimately issued a general discharge from
the Navy owing to the results of that investigation.

In January 1995, Fuller married his wife, Linda.  AR 33.  Citing irreconcilable
differences, they legally separated pursuant to the terms of a separation agreement signed on
September 29, 1998.  Id.  Several months later, Fuller first met Jana Dannemiller, who was a
personal trainer at a gym where he trained.  Id.  The two became friends; at first, Fuller was under
the impression that Ms. Dannemiller was also legally separated from her husband, who Fuller
learned was a Lieutenant Colonel in the Army Reserve.  Id. 34.  Believing that his relationship
with Dannemiller "did not . . . impact[] on good order and discipline" because both parties were
separated from their estranged spouses, Fuller and Ms. Dannemiller soon became involved "in an
intimate relationship."  Id.  Thereafter, he learned that although Ms. Dannemiller and her
husband were separated, they still lived in the same house "but in separate bedrooms" and the
couple planned to have "an amicable divorce."  Id.  Fuller also learned that Ms. Dannemiller's
husband, Lieutenant Colonel Dannemiller, was in fact an active-duty Army officer.  He
nevertheless continued forward with the relationship because he "did not believe their
relationship was impacting on good order and discipline and because both parties were legally
separated."  Id.

Despite Ms. Dannemiller's predictions of an amicable divorce, her separation with her

husband turned acrimonious during May 1999.  Id.  At that point, Ms. Dannemiller and her children moved out of the house after learning that "her estranged husband was stalking her."  Id.  For his part, Lieutenant Colonel Dannemiller reported Fuller's affair with Ms. Dannemiller to the Naval Inspector General ("IG") "in an effort to have adultery and conduct unbecoming charges brought against" Fuller.  Id. 34-35.  "This action ultimately led to an Inspector General Investigation into [Fuller] and his personal life."  Id. 35.

During the course of the IG's investigation, several other incidents of alleged misconduct involving Fuller came to light.  "[B]eyond his adulterous affair, . . . [Fuller] had engaged in sexual relations with an Australian teenage girl and suspected prostitute, transmitted an indecent photograph using a government computer, and been arrested for soliciting a female undercover police officer for sex in exchange for money."  Def.'s Stmt. of Facts ¶ 4.  Thus, on June 16, 1999, the "IG investigation substantiated five allegations against [Fuller]."  Id. ¶ 5.

As a result, on October 7, 1999, Fuller "received Non-Judicial Punishment ("NJP") from the Commandant, Naval District, Washington for multiple violations of the Uniform Code of Military Justice ("UCMJ")."  Id. ¶ 6.  The charges against him included:

> (1) under Article 92 (order violation), 10 U.S.C. § 892, one specification of violating a Joint Ethics Regulation by transmitting indecent images over a government computer; (2) under Article 133, 10 U.S.C. § 933, two specifications of conduct[] unbecoming an officer for [his] wrongful and dishonorable relationships with the spouse of an Army officer and a young Australian woman; and (3) under Article 134, 10 U.S.C. § 934, two specifications of adultery for [his] relationships with the same women.

Id.  Fuller responded to each allegation and presented several witnesses in his defense. Nevertheless, the Commandant found him "guilty of all charges and specifications, but amended the language of the specification involving the Australian woman to excise the portion that she

was a known prostitute." Id. The Commandant issued a punitive letter of reprimand and also recommended that plaintiff's scheduled promotion to Commander be scuttled. Id. Moreover, the Commandant recommended that he "be required to show cause for retention in the Navy." Id.

A Board of Inquiry was then convened on June 1, 2000 to determine whether Fuller should be retained by the Navy. Id. ¶ 7. In his defense, Fuller "presented live witnesses and documentary evidence." Id. At the close of the proceeding, the Board "deliberated and concluded that Plaintiff had violated Articles 92, 133 and 134 of the UCMJ." Id. Consequently, the Board recommended that he be separated from the Navy with a general discharge. Id. The Secretary concurred with the Board's determination and Fuller was discharged on December 31, 2000. Id. ¶ 8.

On December 1, 2003, Fuller filed a petition with the Board of Correction for Naval Records ("BCNR") seeking amendment of his naval records. Id. ¶ 9. He requested "that the BCNR set aside his general discharge and restore him to active duty so that he could reach retirement eligiblity, or grant him enough constructive service to qualify for retirement, or, in the alternative, upgrade his discharge from general to honorable." Id. Fuller cited several grounds for his proposed relief. He argued that:

> [H]e had previously been fully disciplined for his misconduct by receiving nonjudicial punishment, a punitive letter of reprimand, losing his pending promotion to Commander, and losing the potential to ever reach a higher rank; that nonjudicial punishment was designed to rehabilitate and discipline military members and should not be used to end their careers; that charging him under two separate punitive articles for the exact same conduct violates military law under *United States v. Frelix-Vann*, 55 M.J. 329 (C.A.A.F. 2001); and that recent changes to the adultery article in the UCMJ should be considered in that to constitute an offense under the UCMJ, adulterous conduct must either be directly prejudicial to good order and discipline or service discrediting, and that commanders should consider all relevant circumstances including such factors as whether the conduct persisted despite

-4-

counseling or orders to desist and whether the accused or co-actor was legally separated.

Pl.'s Resp. to Def.'s Stmt of Facts ¶ 9.

The BCNR reviewed Fuller's petition and unanimously recommended that his naval record "be corrected to show that he was not discharged . . . [in] December 2000 but continued to serve on active duty . . . until he retired from the Navy on the earliest possible date, which is estimated to be 1 July 2003." AR 9-10. Significantly, however, the Board did "not reach [its] conclusion due to any legal error." Id. at 9. It explained that although "the specifications of misconduct under Article 134 are arguably superfluous, the punishment imposed at NJP, a letter of reprimand, was less than the maximum authorized punishment." Id. Moreover, the BCNR found that Fuller's "adulterous behavior . . . constituted a violation of both Article 133 and 123 and would constitute offenses even under the new [adultery article in the UCMJ]." Id. Nevertheless, his involuntary separation from the Navy, the BCNR reasoned, was "in retrospect . . . unduly severe." Id. His "many years of exceptional service mitigated his misconduct," in the BCNR's view. Id. The BCNR believed that Fuller "has been adequately punished for his misconduct" because, as of the date it issued its recommendation on December 7, 2005, "he has been discharged without retirement benefits for almost five years." Id. Thus, the Board forwarded its report and recommendation to the Secretary for review.

The Secretary, however, disagreed with the Board's assessment and declined to follow its recommendation. On December 16, 2005, the Assistant Secretary of the Navy for Manpower and Reserve Affairs[1] issued a brief memorandum denying Fuller relief. Due both to its brevity and its

_____

    [1] Pursuant to a memorandum dated July 25, 2000, the Secretary of the Navy delegated authority to the Assistant Secretary for Manpower and Reserve Affairs to "take final action in

relevance to this case, the Court will reproduce it in its entirety here:

> I have reviewed and carefully considered former LCDR Fuller's petition and do not concur with the recommendation provided by the Board. For the reasons outlined below, the recommendation is disapproved and relief is denied.
>
> The underlying basis for Petitioner's non-judicial punishment clearly established a pattern of misconduct over a substantial period of time. By committing multiple acts of adultery, the Petitioner displayed a complete disregard for the standards of behavior we expect of an officer. Both the Board of Inquiry and my predecessor concluded that an otherwise exemplary record does not mitigate such egregious behavior. I agree. To now re-write the record and allow the Petitioner to retire from the Navy cannot be justified on the facts provided.
>
> Based on the above, the Board's recommendation that Petitioner's record be changed to show that he was not discharged but continued to serve until eligible for retirement is disapproved and relief is denied.

AR 11. Fuller now brings this action seeking to overturn the Secretary's decision. He asks that the Court reverse the Secretary's determination, order that the Secretary "expunge all documents pertaining to" the inquiry regarding his retention in the Navy, and require that the Secretary correct his naval records to "show that he was not discharged but continued to serve until eligible for retirement." Compl. at 14.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Id. In a case involving review of a final agency action under the Administrative Procedure Act, 5 U.S.C. § 706, however, the standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record. See National Wilderness Inst. v. U.S. Army Corps of Eng'rs, 2005 WL

---

matters arising under the Correction Board Statute, 10 U.S.C. § 1552." AR 12. As ultimate authority remained with the Secretary, of course, the Court will refer to the final decision-maker on Fuller's petition as the "Secretary," as the parties have also done.

691775, *7 (D.D.C. 2005); Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995),

amended on other grounds, 967 F. Supp. 2d 6 (D.D.C. 1997).  Under the APA, it is the role of the

agency to resolve factual issues to arrive at a decision that is supported by the administrative

record, whereas "the function of the district court is to determine whether or not as a matter of

law the evidence in the administrative record permitted the agency to make the decision it did."

See Occidental Eng'g Co. v. INS, 753 F.2d 766, 769-70 (9th Cir. 1985); see also Northwest

Motorcycle Ass'n v. U.S. Dep't of Agriculture, 18 F.3d 1468, 1472 (9th Cir. 1994) ("[T]his case

involves review of a final agency determination under the [APA]; therefore, resolution of th[e]

matter does not require fact finding on behalf of this court.  Rather, the court's review is limited

to the administrative record.").  Summary judgment thus serves as the mechanism for deciding,

as a matter of law, whether the agency action is supported by the administrative record and

otherwise consistent with the APA standard of review.  See Richard v. INS, 554 F.2d 1173, 1177

& n.28 (D.C. Cir. 1977), cited in Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002), aff'd,

348 F.3d 1060 (D.C. Cir. 2003).

 Fuller asserts that the Secretary's refusal to amend his naval records was arbitrary and

capricious under the APA.  That statute requires that the Court "hold unlawful and set aside

agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The "scope of review under the

'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that

of the agency."  Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463

U.S. 29, 43 (1983).  The court must be satisfied that the agency has "'examine[d] the relevant

data and articulate[d] a satisfactory explanation for its action including a rational connection

between the facts found and the choice made.'" Alpharma, Inc. v. Leavitt, 460 F.3d 1, 6 (D.C. Cir. 2006). The agency's decisions are entitled to a "presumption of regularity," Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971), and although "inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one." Id. at 416. The Court's review is confined to the administrative record, subject to limited exceptions not applicable here. See Camp v. Pitts, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").

## DISCUSSION

Pursuant to 10 U.S.C. § 1552(a), the Secretary "of a military department, acting through a civilian board, 'may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice.'" Mueller v. Winter, 485 F.3d 1191, 1198 (D.C. Cir. 2007). An aggrieved party may obtain review of the Secretary's final decision under the APA, 5 U.S.C. § 706(2)(A). Id. But the decisions of military departments are entitled to especially deferential review as compared to their civilian agency counterparts. "Although the federal courts have 'jurisdiction to review decisions of [military] Correction Board[s], we do so under an 'unusually deferential application of the 'arbitrary or capricious' standard of the APA." Id. (quoting Musengo v. White, 286 F.3d 535, 538 (D.C. Cir. 2002). "The plaintiff has the burden of satisfying this standard by providing 'cogent and clearly convincing evidence' and must 'overcome the presumption that military administrators discharge their duties correctly, lawfully, and in good faith.'" Smith v. Dalton, 927 F. Supp. 1, 4 (D.D.C. 1996) (quoting Swann v. Sec'y of the Navy, 811 F. Supp. 1336, 1339 (N.D. Ind. 1992)); see also

Calloway v. Brownlee, 366 F. Supp. 2d 43, 54 (D.D.C. 2005). "All that is required is that the Board's decision 'minimally contain a rational connection between the facts found and the choice made.'" Frizelle v. Slater, 111 F.3d 172, 176-77 (D.C. Cir. 1997) (quoting State Farm Mut. Auto. Ins. Co., 463 U.S. at 43). Nevertheless, the Court must "examine[] whether or not the [Secretary] has considered all of the evidence before it, and if so, if it has stated why evidence contrary to the final decision was 'disregarded or given less weight.'" Smith, 927 F. Supp. at 5.

Against that legal backdrop, Fuller lodges two distinct but related attacks on the Secretary's decision here. First, he argues that the Secretary failed to comply with binding naval regulations in reaching his decision. According to Fuller, that error alone supplies an independent ground to render the Secretary's decision arbitrary and capricious. Second, Fuller insists that the Secretary's opinion was also arbitrary and capricious under the APA because the Secretary neglected to address specifically the factual and legal arguments in favor of record correction. As explained below, Fuller is correct on both points.

## I.    The Navy's Regulations

It is a fundamental principle of administrative law that an agency is bound to adhere to its own regulations. See Frizelle, 111 F.3d at 177 ("The Coast Guard, like the military departments and agencies in general, is bound to follow its own regulations.") (citing Service v. Dulles, 354 U.S. 363, 388 (1957)). Indeed, failure to do so can lead to arbitrary and capricious decision-making in violation of the APA. See Ingram Barge Co. v. United States, 884 F.2d 1400, 1405 (D.C. Cir. 1989) ("Thus, even if the [agency] had made and then breached a promise to depart from its own regulation, its departure -- not its return to the established course -- would be arbitrary and capricious.").

In this case, there are two primary provisions of the Navy's regulations at issue. To begin with, 32 C.F.R. § 723.7 broadly concerns "action by the Secretary." In relevant part, it provides that the "record of [BCNR] proceedings . . . will be forwarded to the Secretary who will direct such action as he or she determines to be appropriate." 32 C.F.R. § 723.7(a). That provision also guides the Secretary's decision-making process in the event that he elects to deny relief:

> If the Secretary's decision is to deny relief, such decision shall be in writing and, unless he or she expressly adopts in whole or in part the findings, conclusions and recommendations of the Board, or a minority report, <u>shall include a brief statement of the grounds for denial</u>. See § 723.3(e)(4).

<u>Id.</u> (emphasis added). Thus, § 723.7(a) expressly incorporates § 723.3(e)(4) by reference. The latter regulation outlines the general requirements and procedures before the BCNR. Specifically, subsection (e)(4) provides:

> The <u>brief statement of the grounds for denial</u> shall include the reasons for the determination that relief should not be granted, including the applicant's claims of constitutional, statutory and/or regulatory violations that were rejected, together with all the essential facts upon which the denial is based, including, if applicable, factors required by regulation to be considered for determination of the character of and reason for discharge.

32 C.F.R. § 723.3(e)(4) (emphasis added).

Comparing the two regulatory provisions reveals that they contain the identical language -- "brief statement of the grounds for denial." Indeed, subsection (e)(4) defines the constituent requirements of a satisfactory "brief statement." Hence, Fuller argues that § 723.7(a) requires "the Secretary to include a 'brief statement of the grounds for denial,' [and] also defines that term by explicitly referring to another subsection of the regulation: 32 C.F.R. § 723.3(e)(4)." Pl.'s Reply at 2. Although it is not entirely clear, the Secretary appears to read § 723.7 in isolation. <u>See</u> Def.'s Reply at 5 ("The regulations require only a 'brief statement of the grounds for denial.'

-10-

32 C.F.R. § 723.7"). The Secretary either ignores or does not recognize that the referenced §

723.3(e)(4) defines what such a "brief statement" must contain. To the extent that the Secretary

implicitly argues that the term "brief statement" in § 723.7 should be construed in isolation from

§ 723.3(e)(4), the Court rejects that proposition. Fuller's construction of the governing

regulations is not only persuasive, it is compelling. See, e.g., Atwell v. Merit Systems Protection

Bd., 670 F.2d 272, 286 (D.C. Cir. 1981) ("[W]e are guided . . . by the cardinal canon of statutory

construction that dictates that provisions should, whenever possible, be construed to achieve

consistency."); Citizens to Save Spencer County v. EPA, 600 F.2d 844, 870 (D.C. Cir. 1979)

("[W]e are guided by the rule that the maximum possible effect should be afforded to all

statutory provisions, and, whenever possible, none of those provisions rendered null or void.").

In short, the Secretary's putative construction would simply strike out the concluding, directive

clause of § 723.7(a) and the explicit reference to § 723.3(e)(4), thereby eviscerating the final

sentence of § 723.7(a), which is an untenable result.

    In this case, it is beyond dispute that the Secretary, in the process of denying Fuller relief,

did not incorporate the contrary recommendation of the Board or any applicable minority report.

Thus, he was required by regulation to issue a written brief statement of the grounds for denial.

And Fuller is correct that the "'brief statement of the grounds for denial' [that] 32 C.F.R. §

723.7(a) requires to be contained in the Secretary's decision . . . must satisfy the definition found

in 32 C.F.R. § 723.3(e)(4)." Pl.'s Reply at 3. With that established, it is evident that the

Secretary's decision in this case fails to pass muster. As noted above, Fuller presented the

BCNR with a litany of arguments in favor of amending his records, two of the more significant

of which were: (1) that "charging [him] under two separate punitive articles for the exact same

conduct violates military law under *United States v. Frelix-Vann*, 55 M.J. 329 (C.A.A.F. 2001)";

and (2) that "recent changes to the adultery article in the UCMJ should be considered" when

passing on his petition.  Pl.'s Resp. to Def.'s Stmt of Facts ¶ 9; AR 37 ("Here, the government

ignored . . . military law and charged LCDR Fuller for both conduct unbecoming an officer and

adultery for each of his relationships with Ms. Dannemiller and [another woman]. . . . The recent

changes to the adultery article in the Uniform Code of Military Justice are also instructive.").

The BCNR addressed each argument in its decision, albeit in passing.  First, in reference

to Fuller's contention that he was improperly charged under two separate articles of the UCMJ

for the same underlying conduct, the Board indicated that "the specifications of misconduct

under Article 134 [were] arguably superfluous."  AR 9.  Nevertheless, the BCNR did not find

that this potential error was particularly significant because "the punishment imposed at NJP, a

letter of reprimand, was less than the maximum authorized punishment" in any event.  Id.

Turning to Fuller's assertions concerning the updated adultery provisions of the UCMJ, the

Board concluded that "Petitioner's adulterous behavior with the wife of an Army officer, even

though both individuals were separated during most of the affair, constituted a violation of both

Article 133 and 123 and would constitute offenses even under the new [Manual for Courts-

Martial]."  Id. (emphasis added).  Despite the fact that the Board was relatively unimpressed by

Fuller's legal objections to his involuntary separation, it recommended correction of his records

because "in retrospect . . . discharge from the Navy was unduly severe" in light of Fuller's "many

years of exceptional service [that] mitigated his conduct."  Id.

The Secretary, however, disagreed with the BCNR's conclusion that Fuller's exemplary

professional achievements should weigh against involuntary separation.  Indeed, the Secretary

expressly indicated that "an otherwise exemplary record does not mitigate such egregious behavior." Id. 11. To be sure, the Secretary was free to make that determination. The trouble with his written decision, however, is that it fails to address at all Fuller's two principal arguments. Although those arguments did not factor into the Board's ultimate recommendation, naval regulations -- namely, sections 723.7 and 723.3(e)(4) -- nevertheless required the Secretary to discuss plaintiff's "claims of constitutional, statutory and/or regulatory violations that were rejected."[2] 32 C.F.R. § 723.3(e)(4). And the Secretary's brief written statement plainly fails to do so. Contrary to the Board's written report, the Secretary's decision makes no mention whatsoever of Fuller's military law arguments. Thus, as Fuller correctly points out, "the Secretary's decision fails on its face to satisfy this definition because the Secretary's decision does not include the mandatory contents listed in 32 C.F.R. § 723.3(e)(4)." Pl.'s Reply at 3.

The Secretary does not respond specifically to this contention. In the related APA context (discussed more fully below), however, the Secretary characterizes Fuller's specific arguments as falling into two broad categories: (1) those "regarding the severity of his 'punishment'"; and (2) "those relating to the form of the charges brought against him." Def.'s Reply at 8, nn. 7-8. The Secretary's decision is most obviously deficient under § 723.3(e)(4) with respect to the second set of arguments.[3] The three paragraph opinion contains no reference

---

[2] Of course, the Board may have assigned more weight to Fuller's military law arguments if it was not inclined to rule in his favor on other grounds.

[3] Fuller takes issue with the Secretary merely engaging in a "brief general discussion." Pl.'s Reply at 4. In his view, the applicable regulations require a discussion of "specific items in order for the Secretary to reject unanimous findings and recommendations by the BCNR." Id. at 5 (emphasis in original). In any event, Fuller also insists that the Secretary has not satisfied his obligations pursuant to § 723.3(e)(4) with respect to the first category of arguments pertaining to the severity of punishment. The Secretary, on the other hand, maintains that Fuller's arguments

whatsoever to Fuller's arguments that the charges brought against him ran afoul of established principles of military law and thus exaggerated his culpability.

It is nevertheless argued that the "Secretary's language rejects Plaintiff's legalistic arguments regarding the form of the charges to conclude that the underlying misdeeds -- standing alone and regardless of legal description or prior punishment -- justify a denial of his petition." Def.'s Reply at 10-11.  According to the Secretary, he is not obligated to address "every conceivable legal point raised by Plaintiff."  Id. at 10.  The Secretary's implicit rejection of Fuller's military law contentions was based, it is argued, upon the Secretary's review of the administrative record and "in part on Plaintiff's own admissions regarding his misconduct."  Id. That, according to the Secretary, was sufficient to satisfy the duties imposed by naval regulations. The Court disagrees.

To begin with, as Fuller correctly notes, "implicitly" addressing arguments is not enough under the governing naval regulations (or the APA, for that matter).  Pl.'s Mot. at 11.  Indeed, § 723.3(e)(4) rather plainly requires that the Secretary's brief written statement "shall include the reasons . . . that [plaintiff's] claims of constitutional, statutory and/or regulatory violations . . . were rejected."  32 C.F.R. § 723.3(e)(4) (emphasis added).  The Secretary's assertion that he may "implicitly" dispose of a petitioner's objections is inconsistent with the regulatory language that compels the Secretary to record the reasons for his decision to reject those arguments.  Moreover,

"regarding the severity of his 'punishment' are adequately addressed by the Secretary in his written decision."  Def.'s Reply at 8.  It does appear that the Secretary broadly considered whether Fuller's involuntary separation was unduly severe in light of his exemplary performance. See AR 11.  The Court does not need to decide whether, as Fuller would have it, that general discussion is inadequately particularized to satisfy the Secretary's obligations under to § 723.3(e)(4) because the Secretary's patent failure to address Fuller's military law arguments is sufficient to render the decision invalid under the governing regulations.

Fuller is also correct that the Secretary's decision did not explicitly "divide Plaintiff's numerous specific claims into 'two categories' of 'group (a)' and 'group (b)' and then proceed to analyze them by category." Pl.'s Reply at 7. That gloss was crafted in the briefing before this Court and it represents an aspirational characterization of the Secretary's decision. To assume that the Secretary implicitly followed that same mode of analysis runs perilously close to a prohibited "*post hoc* rationalization[] for agency action." State Farm Mut. Auto. Ins. Co., 463 U.S. at 50.

Finally, the Secretary launches two substantive arguments to excuse the failure to discuss Fuller's military law arguments. First, the Secretary points out that Fuller should be judged by the adultery regulations that were in force at the time when his conduct took place, not subsequent revisions to those rules. Def.'s Reply at 12. Additionally, "plaintiff's petition concedes that his conduct still violates the modified standard for adultery, [see] AR 38 (describing it as existing at the 'mild end of the spectrum for these cases'), and the denial of his petition was based on more than just adultery." Id. at 12-13. But these contentions do not excuse the Secretary's silence in contravention of the regulations. Even taking these averments at face value,[4] the Secretary was still required by regulation to address Fuller's arguments, but failed to do so. To be sure, the Secretary was not obliged to compose a lengthy disposition with respect to those points, but he was required at least to raise and dispose of them.

Next, the Secretary proclaims that "[a]s for the multiple charges being in violation of military law, even if true, that would be immaterial to the proceedings before the BCNR because

_____

[4] In any event, the Secretary makes too much of Fuller's admission that his conduct fell within the "mild end of the spectrum" for adultery cases. While Fuller admittedly made that statement, the Court perceives that the crux of his argument was that his self-described "mild" conduct should be weighed in the context of the several mitigating factors that the amended adultery regulations describe, not to mention his outstanding service record. See AR 37-38.

it was resolving plaintiff's petition based on the substantial material in the record supporting the Secretary's conclusions." Def.'s Reply at 13. "As a result," it is argued, "there was no need for the Secretary to address petitioner's arguments in his decision." Id. That is incorrect. At the outset, notwithstanding the Secretary's *post hoc* contention, he is required by regulation to address Fuller's legal arguments. If one such argument is "immaterial," then the Secretary can quickly dispose of it by merely saying so and explaining why. The Secretary cannot, however, simply decide that he need not address an issue raised by Fuller and the BCNR below. And, as explained above, the Secretary certainly cannot supply a *post hoc* rationale to excuse the silence in his decision.

But even taken on its own terms, the Secretary's argument lacks merit. Contrary to the suggestion that Fuller's military law contention was "immaterial to proceedings before the BCNR," the Board itself saw fit to discuss it. See AR 9 ("Although the specifications of misconduct under Article 134 are arguably superfluous . . . ."). That strongly suggests that the BCNR regarded the argument as relevant. Indeed, it is difficult to conceive how it would not be so: the entire purpose of the BCNR process is to correct errors or injustices. If, as the Secretary is apparently willing to concede, Fuller's multiple charges argument is correct, then the conviction under multiple UCMJ counts for the same underlying conduct may have motivated the Board of Inquiry to impose a more severe punishment upon him. That is an error that the BCNR would undoubtedly want to investigate; indeed, it did just that in this case. It defies reason to argue, as the Secretary does, see Def.'s Reply at 13, that such an error is "irrelevant" to the BCNR's review.

In short, Fuller is correct that the "decision fails on its face to comply with [] governing

regulations. . . . The Secretary's decision is thus arbitrary, capricious, and contrary to law." Pl.'s

Reply at 5. As noted above, an agency is required to adhere to its own regulations during its

decision-making process.[5] Ingram Barge Co., 884 F.2d at 1405. The Secretary's failure to

address expressly Fuller's "legalistic" arguments as required by naval regulations renders the

Navy's decision arbitrary and capricious or otherwise contrary to the law. Thus, the decision

must be set aside.

## II.    APA Review

The Secretary's decision also cannot be sustained even under the particularly deferential

standard of APA review employed in this case. Fuller's primary argument is effectively identical

to his contention based on Navy regulations discussed above except that it is now couched in

terms of the APA. Once again, Fuller's strongest point centers around the Secretary's silence

concerning his military law arguments. Thus, Fuller asserts that "failing to address even one of

[the] arguments raised by Plaintiff 'which do not appear frivolous on their face' and could affect

the Secretary's 'ultimate disposition' is arbitrary and capricious under the APA." Pl.'s Reply at 7

(quoting Calloway, 366 F. Supp. 2d at 55). Fuller places heavy emphasis upon a passage from

---

[5] The Secretary has offered no authority that indicates that the failure to adhere to naval regulations is excused by the greater level of deference conferred upon military agencies. The rationale underlying the more robust deference is "to ensure that the courts do not become a forum for appeals by every [officer] dissatisfied with his or her ratings, a result that would destabilize the military command and take the judiciary far afield of its area of competence." Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000). In other words, the enhanced deference protects the ultimate decisions of military agencies. But the Court fails to see why the Navy should be less obliged to adhere to its own regulations -- regulations, it bears repeating, that the Navy itself promulgated -- than civil agencies are. The requirement that agencies comply with their own regulations merely ensures that they follow proper procedures in reaching their decisions. Here, this Court does not take issue with any particular rating or evaluation assigned to an officer, or even with the substance of the Secretary's decision. Instead, the inquiry is simply whether the Navy complied with its own binding regulations in reaching its decision.

Calloway that states: "If the agency decides to disregard [an] argument, then it <u>must expressly
indicate that it has done so</u>."  366 F. Supp. 2d at 55 (emphasis added).  Next, he points to the
D.C. Circuit's decision in <u>Frizelle</u>, which held that: "[B]ecause the Board's decision did not
respond to two of Frizelle's arguments, which do not appear frivolous on their face and could
affect the Board's ultimate disposition, we conclude that the Board's ultimate decision was
arbitrary."  111 F.3d at 177.  Finally, Fuller directs the Court to two additional decisions from
this District that stand for the same proposition.  <u>See</u> <u>Mudd v. Caldera</u>, 26 F. Supp. 2d 113, 120
(D.D.C. 1998) ("The Court concludes that [the Secretary's] decision was . . . arbitrary and
capricious because [petitioner] raised a non-frivolous argument that the board apparently
accepted but [the Secretary] did not address at all."); <u>Smith</u>, 927 F. Supp. at 5 ("[The agency
must] show that it has considered all of the evidence before it and . . . state why evidence
contrary to the ultimate conclusion reached was disregarded or given lesser weight.") (quoting
<u>Mozur v. Orr</u>, 600 F. Supp. 772, 782 (E.D. Pa. 1985)).

   Fuller makes quite a strong initial case.  In response, the Secretary attempts to distinguish
the cases that Fuller relies upon, but his effort is ultimately not persuasive.  According to the
Secretary, <u>Frizelle</u> and <u>Calloway</u> are distinguishable because they both concern situations where
the agency "failed entirely to address petitioners' non-frivolous arguments."  Def.'s Reply at 13.
Here, as the Secretary would have it, Fuller "makes no argument that the Secretary failed to
review the record, which includes the BCNR's detailed memorandum."[6]  <u>Id.</u>  Instead, the

_____

   [6] In fact, the Secretary attempts to rely upon his supposed review of the record as an
independent basis to uphold his decision.  <u>See</u> Def.'s Reply at 8-9.  But that alone is not
sufficient.  To begin with, the Secretary did not explicitly adopt the BCNR's analysis of Fuller's
military law records; indeed, as stated immediately below, the Secretary was entirely silent on
those points.  Moreover, the BCNR's discussion of the redundant count position is not entirely

-18-

Secretary argues that in this instance the "BCNR considered all of Plaintiff's arguments and made its detailed recommendation to the Secretary. The Secretary, in turn, reviewed those arguments, along with the BCNR's recommendation, before denying relief." Id. at 14. That is partially correct; the Board did, in fact, address the two primary arguments at issue here. But the Secretary did not do so. And, as in Calloway, Frizelle, Mudd, and Smith, if the Secretary decides to disregard an argument, then he must expressly indicate that he has done so. Fuller's military law arguments are precisely the sort of "contrary evidence" that the final decision-maker must explicitly consider under the APA.

The Court finds that this case is indistinguishable from these authorities. Thus, the Secretary's silence in this instance renders his ultimate decision arbitrary and capricious because he "has not given 'a reason that a court can measure' for [his] decision" with respect to Fuller's military law arguments.[7] Frizelle, 111 F.3d at 177 (quoting Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989)).[8] The assertion that the Secretary reviewed the administrative

---

satisfactory on its own terms. Although the BCNR noted that the duplicitous counts were "arguably superfluous," it nevertheless concluded that such a possible error did not infect the adjudication because Fuller merely received a letter of reprimand, which "was less than the maximum authorized punishment." AR 9-10. That may be the case, but it overlooks the fact that Fuller was also ordered to show cause for his retention in the Navy. And at his retention hearing before the Board of Inquiry, he was forced to deal with five convictions pursuant to the UCMJ rather than three, the number of "independent" specifications filed against him. In any event, the Secretary was required to engage in at least a cursory examination of Fuller's arguments on this point, which he neglected to do.

[7] Indeed, the Secretary even failed to adopt or otherwise reference the BNCR's discussion of Fuller's military law arguments.

[8] The Secretary does not appear to argue that Fuller's military law contentions are "frivolous," such that the Secretary would not be required to address them under the case law discussed above. In any event, Fuller has cited a relatively recent opinion from the U.S. Court of Appeals for the Armed Forces that seems to support his position. See United States v. Frelix-

record and the BCNR's attached recommendation is not nearly enough to satisfy his burden to reveal the decision-making process. The Secretary may indeed be correct when he states that "[a]t bottom, this is an unusually straightforward case" concerning a "demonstrated and admitted pattern of misconduct." Def.'s Reply at 5. But the Secretary must still explain his reasoning -- and address contrary arguments -- even in those cases he considers simple. Because the Secretary did not do so here, the decision to deny Fuller the relief he requested must be set aside.

That brings us to the final question, which involves the proper remedy. Fuller urges the Court to reverse the Secretary's decision on the merits and order him to correct the records accordingly. But the Court concludes that reversal is not the proper course of action here. The analysis discussed above does not identify flaws specific to the substance of the decision that the Secretary reached on the merits. Instead, the deficiencies concern only the flaws in the Secretary's decision-making process. The appropriate remedy, then, is to vacate the Secretary's decision and remand Fuller's petition for further proceedings consistent with this Memorandum Opinion. The Court stresses that it expresses now view with respect to the merits of the Secretary's decision and has not concluded that Fuller's arguments must be accepted (or, indeed, that they are even persuasive). The Secretary simply must specifically address Fuller's objections to his involuntary

---

Vann, 55 M.J. 329, 330-31 (C.A.A.F. 2001) ("In United States v. Cherukuri, . . . this Court recently held that two convictions could not be sustained for an Article 134, UCMJ, violation and an Article 133, UCMJ, violation based on the same act. . . . We think the same conclusion is required for dual convictions for the same act under Articles 133 and 121, UCMJ."). The U.S. Court of Appeals for the Armed Forces is an Article I court charged with overseeing certain aspects of military law and courts-martial pursuant to the UCMJ. See generally Establishment of the Court, http://www.armfor.uscourts.gov/Establis.htm. Thus, Fuller has stated a non-frivolous basis for his multiple-charge argument. Naturally, on remand the Secretary is free to conduct his own review and application of Frelix-Vann.

discharge.[9]  If Fuller remains dissatisfied with the Secretary's decision on remand, he may elect to

pursue a challenge to that decision.

## CONCLUSION

For the foregoing reasons, the Court will grant Fuller's motion and deny the Secretary's

motion.  A separate Order accompanies this Memorandum Opinion.

_____/s/_____

JOHN D. BATES

United States District Judge

Date:  March 14, 2008

---

[9] Fuller makes one additional but unsuccessful argument to set aside the Secretary's decision.  He maintains that the "administrative record contains significant inconsistencies, even to the extent of being unclear and contradictory as to which agency official actually decided this case."  Pl.'s Reply at 6.  In particular, Fuller asserts that it is not clear "whether it was the Assistant General Counsel, rather than the Assistant Secretary of the Navy for Manpower and Reserve Affairs, who actually made the subject decision."  Id.  And, according to Fuller, "[t]here is also conflicting evidence in the record as to whether the Assistant General Counsel even possessed the legal authority to make such decision [sic] given the requirement to refer the case back to the Assistant Secretary."  Id.  The Court does not share that view of the record, however.  Fuller's argument evidently centers upon the "transmittal letter to Plaintiff's counsel informing him of the Secretary's decision to deny relief."  Def.'s Reply at 3.  That letter, in turn, indicated that "the designated representative of the Assistant Secretary of the Navy for Manpower and Reserve Affairs" made the decision to deny plaintiff's request for correction.  Id.; AR 3.  Fuller seizes on that passage to argue that it is unclear whether the Assistant General Counsel for Manpower and Reserve Affairs or the Assistant Secretary issued the ultimate decision here.  But the opinion itself is signed by the Assistant Secretary, and the "presumption of regularity" operates to dictate that the "Assistant Secretary for Manpower and Reserve Affairs authored and signed the decision in this case."  Id.; see also 32 C.F.R. § 723.3(e)(2) (explaining that the Secretary is entitled to a "presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, [courts] will presume that they have properly discharged their official duties.").  Even if the transmittal letter -- which the Secretary insists has "no legal effect," Def.'s Reply at 3 -- may undercut the proposition that the Assistant Secretary made the final decision, it does not amount to the sort of "substantial evidence to the contrary" required to overcome the presumption of regularity.  In any event, the Assistant General Counsel is an authorized delegatee of the Secretary's authority, notwithstanding any obligation to "refer" certain cases back to the Assistant Secretary.  See AR 12.